

RECEIVED
1/12/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
CVK

**THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | |
|---|---|
| EDWARD ENGELS,<br>on behalf of himself and minor child E.R.E.,<br><br>Plaintiffs,<br><br>v.<br><br>FELIZA CASTRO,<br>ROSS MORREALE,<br>PAMELA KUZNIAR, Court-Appointed<br>Guardian ad Litem,<br>DR. DAVID FINN, Court-Appointed<br>Evaluator,<br>THOMAS FIELD, Attorney at Beermann<br>LLP,<br>JONATHON STEELE, Attorney at Beermann<br>LLP,<br>HON. PAMELA E. LOZA,<br><br><br>Defendants. | **1:26-cv-00359**<br>**Judge Thomas M. Durkin**<br>**Magistrate Judge Gabriel A. Fuentes**<br>Civil No. **RANDOM/Cat. 2**_____<br><br>District Judge _____<br>Magistrate Judge _____<br><br><br>Complaint and Jury Demand and<br>Requesr for Temporary Restraining Order<br>Pursuant to FED R. CIV. P. 65 (CIVIL<br>RIGHTS) |

**EMERGENCY MOTION FOR TRO**

**I.      INTRODUCTION AND NATURE OF ACTION**

1.      This action is brought by Plaintiff Edward Engels, proceeding pro se and on behalf of his minor daughter, E.R.E., to redress ongoing violations of their constitutional rights arising from domestic-relations proceedings in the Circuit Court of Cook County, Illinois.

1

2. Plaintiff alleges that state actors, court-appointed professionals, and private individuals acted jointly and under color of state law to deprive him and his minor daughter of due process, equal protection, and the fundamental right to the care, custody, companionship, and control of their parent-child relationship.

3. Over a twelve-year period, Plaintiff and his minor daughter have been subjected to irregular, retaliatory, and biased judicial processes that resulted in the suppression of material evidence, the distortion of the factual record, and the issuance of orders unsupported by law or fact each of which caused escalating emotional, constitutional, and safety-based harm to both Plaintiff and the minor child.

4. Plaintiff further alleges that Defendants engaged in coordinated conduct consistent with an enterprise under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, thereby injuring both Plaintiff and his minor daughter in their parental interests, civil rights, and property rights. This emergency motion does not seek adjudication of any RICO claims; however, limited reference is included solely to provide context regarding the coordinated conduct underlying the urgent need for emergency temporary injunctive relief.

5. Plaintiff seeks immediate emergency relief in the form of a Temporary Restraining Order under Federal Rule of Civil Procedure 65 to prevent further irreparable harm to both Plaintiff and his minor daughter. Plaintiff also seeks declaratory relief, injunctive relief, compensatory damages, punitive damages, and such additional relief as available under 42 U.S.C. §§ 1983 and 1986.

6. Plaintiff brings this action on an emergency basis because Defendant Feliza Castro ("Mother") and her paramour Defendant Ross Morreale, based on information established

2

in the underlying court proceedings and information available to Plaintiff, are actively working to leave the United States and to remove the minor Plaintiff, E.R.E., from the jurisdiction of both state and federal courts. Plaintiff alleges that Defendants' anticipated actions pose an immediate and irreparable threat to the minor Plaintiff's safety, stability, and constitutional rights, and constitute a direct attempt to evade judicial oversight and frustrate ongoing legal proceedings.

7. Plaintiff expressly does not seek review, reversal, modification, or interference with any state-court custody or parenting-time order. All such orders remain fully enforceable. This motion targets only unlawful conduct occurring outside legitimate judicial decision-making, consistent with Rooker–Feldman, Younger, and the domestic-relations exception.

## II. JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. §§ 1983,

9. This Court has jurisdiction under 28 U.S.C. § 1343(a)(3) and (4) because Plaintiff seeks to redress the deprivation of civil rights under color of state law and to secure equitable and other relief for violations of federal statutes protecting civil and constitutional rights.

10. This Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, including emergency injunctive relief under Federal Rule of Civil Procedure 65.

11. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because each Defendant resides in, works in, conducts official duties in, or maintains sufficient contacts with this District, and because a substantial portion of the acts and omissions giving rise to this action occurred within this District.

12. Personal jurisdiction over each Defendant is proper because each resides in,

3

works in, conducts business in, or has sufficient minimum contacts with the State of Illinois and the Northern District of Illinois, and because the acts complained of occurred within this Distric

## III. PARTIES AND ROLES

**Plaintiffs**

13. Plaintiff Edward (EE) Engels is an adult resident of Cook County, Illinois, and the biological father of minor child E.R.E. Plaintiff brings this action pro se to vindicate his own constitutional rights, including his fundamental liberty interests in the care, custody, companionship, safety, and decision-making authority over his daughter, as guaranteed by the First, Fifth, and Fourteenth Amendments to the United States Constitution. Plaintiff has suffered direct personal injury, including deprivation of due process, unequal treatment, interference with parental rights, reputational harm, economic loss, and ongoing emotional and relational harm.

14. Plaintiff further brings this action to protect the interconnected constitutional and safety interests he shares with his minor daughter, and to prevent further irreparable harm to both himself and the child. Defendants' actions have directly impacted not only Plaintiff's protected liberty interests but also the safety, well-being, and stability of his minor daughter, whose interests are inseparable from Plaintiff's federally protected parental rights.

15. Minor Plaintiff E.R.E. is a child residing in Cook County, Illinois. She appears in this action through her father, Plaintiff Engels, as next friend pursuant to Fed. R. Civ. P. 17(c). Minor Plaintiff's constitutional rights, including her rights to safety, familial association, bodily integrity, and to be free from state-created dangers—have been directly violated by Defendants' conduct. The injuries suffered by the minor Plaintiff arise both independently and as a direct consequence of the ongoing deprivation of her father's constitutional rights.

**Defendants**

4

16. Defendant Feliza Castro ("FC) is an adult resident of Cook County, Illinois and is the Moher to ERE. Feliza Castro is sued in her individual capacity. Plaintiff alleges that Castro engaged in conduct that materially contributed to the deprivation of the constitutional and safety rights of both Plaintiffs and played a central role in the harm described herein.

17. Defendant Ross Morreale ("RM") is an adult resident of Miami, FL. Morreale is sued in his individual capacity. Plaintiff alleges that Morreale interfered with Plaintiff's protected parental rights, disrupted the parent-child relationship, and contributed to harm suffered by both Plaintiffs. He is the on again off again paramour of Feliza Castro

18. Defendant Pamela Kuzniar ("Kuzniar") is an attorney licensed in Illinois who served as Guardian ad Litem in the family-court proceedings. Kuzniar is sued in her individual capacity. Plaintiff alleges that she acted outside the scope of her statutory authority, disregarded evidence, failed to fulfill mandatory duties, and engaged in conduct that deprived both Plaintiffs of due process, equal protection, and fair proceedings.

19. Defendant Dr. David Finn ("Finn") is a psychologist and court-appointed evaluator. Finn is sued in his individual capacity. Plaintiff alleges that he created biased and incomplete evaluations, ignored material evidence, and contributed to outcomes that harmed both Plaintiffs and violated their constitutional rights.

20. Defendant Thomas Field ("Field") is an attorney with Beermann LLP. Field is sued in his individual capacity. Plaintiff alleges that he participated in coordinated actions designed to influence judicial outcomes, suppress evidence, and interfere with the constitutional rights of both Plaintiffs.

21. Defendant Jonathon Steele ("Steele") is an attorney with Beermann LLP. Steele is sued in his individual capacity. Plaintiff alleges that he engaged in acts and communications

demonstrating improper influence, bias, and coordination with other actors in ways that deprived both Plaintiffs of their constitutional protections.

22. Defendant Hon. Pamela E. Loza ("Judge Loza") was a former Judge of the Circuit Court of Cook County District One. Transferred to a new district after seventeen years. Judge Loza presided over this case for ten years prior to her transfer to a new District 3 - Maywood under dubious circumstances.

**Non- Defendant Party**

23. Judge Regina A. Scannicchio is a sitting judge of the Circuit Court of Cook County.She is presiding over this case now. While she is not named as a defendant in this action, she is referenced in the factual allegations and enterprise-related context due to rulings, procedural orders, and events that occurred during her tenure presiding over the underlying state-court matter. Plaintiff includes these references solely to provide a full and accurate record of relevant events. Plaintiff expressly states that no claim is currently asserted against Judge Scannicchio in this action and reserves the right to amend. ⌗

## IV.  FACTUAL BACKGROUND, RECENT FILINGS AND PROCEDURAL MISCONDUCT

24. This matter arises from more than a decade of litigation in the Circuit Court of Cook County, during which Plaintiff has been repeatedly deprived of due process, equal protection, and a fair tribunal due to systemic misconduct by court-appointed officials, judicial officers, and attorneys aligned with two interconnected enterprises.

25. Plaintiff has consistently served as the primary caregiver for his minor daughter for the first ten years of the minor child's life.  Respondent, by contrast, has a longstanding

history of instability, substance abuse, noncompliance, and mental-health concerns, as documented by multiple professionals whose findings were suppressed or ignored by court actors.

26.     On June 29, 2022, the Illinois Department of Financial and Professional Regulation formally revoked Dr. Spero's medical license after determining he had engaged in serious violations involving controlled substances to FC (Feliza Castro). The IDFPR and DEA are unaware that Dr. Spero provided FC access to his DEA registration and prescription pad, thereby enabling her to issue narcotic prescriptions for herself.  **(Exhibit 1)**

27.     Despite the gravity of Spero's misconduct, the court, evaluator Dr. David Finn, and GAL Pamela Kuzniar continued to minimize or ignore Respondent's drug-related risks during custody litigation. The Gal and Dr Finn were obligated to report this information that EE reported to them by law and they refused to do so dismissing the evidence directly from Feliza Castro.

28.     On April 19, 2023, Judge Joy Rosenberg was appointed as the Judge for missing Judge Loza to decide and then hear Plaintiff's emergency motion after Defendant tested positive for cocaine during her parenting time, placing the minor child at immediate risk. Judge Rosenberg found the matter to be a genuine emergency and rejected a forged medical document submitted by Respondent's attorney falsely stating that cocaine had been medically administered. The document referenced a dangerous mixture of cocaine, lidocaine, and other substances. Judge Rosenberg immediately suspended Respondent's parenting time due to imminent risk to the child.  **(Exhibit 2 and Exhibit 3)**

29.     GAL Pamela Kuzniar refused to appear, either in person or via Zoom, believing her recommendations could not survive scrutiny by an independent judge. Three other

7

Emergency Motions by Edward Engels thru counsel, Pamela Loza refused to hear.

30. The following day, without conducting a hearing, Judge Pamela Loza reinstated Respondent's parenting time and reversed Judge Rosenberg's emergency order, despite the positive cocaine result and the documented danger to the child.

31. On April 25, 2023, court-appointed pharmacologist Dr. James O'Donnell, selected at the insistence of GAL Kuznia, issued a formal report concluding that Respondent was "unfit to parent." He based this finding on drug-testing positives, patterns, missed tests, prescription anomalies, and signs of chemical dependency. **(Exhibit DR01)**

32. Rather than act on these findings, the court, evaluator Finn, and GAL Kuzniar minimized or actively suppressed Dr. O'Donnell's report, consistent with a broader pattern of protecting Respondent and ignoring evidence favorable to Plaintiff.

33. On March 5, 2024, Plaintiff was coerced into signing a new parenting agreement after counsel advised that entrenched judicial bias made a fair trial impossible. Plaintiff signed under severe financial and emotional duress after years of rulings contrary to the evidence. Linda Epstein, Edward Engel's counsel advised him not to proceed based with trial based on the ongoing misconduct. **Exhibit-X2**

34. Immediately following the March 5 hearing, Judge Loza and GAL Kuzniar entered chambers and engaged in concealed ex parte discussions observed by court staff and Sheriff's Officer Sanchez. This was consistent with their long-standing pattern of off-record coordination.

35. On April 9, 2024, Respondent, through attorney Jonathan Steele, filed a Motion for "Intent to Relocate," revealing for the first time her plan to permanently relocate the minor child to California after 30 days of the above agreement. **( Exhibit X3)**

8

36. On May 24, 2024, a legal publication reported that Custody evaluator Dr. Finn admitted under oath that he had "never" ruled against a Beermann client confirming evaluator bias where Respondent was represented by Beermann LLP. **(Exhibit X4)**

37. Between August 23, 2024 and November 7, 2024, the case was subjected to a series of improper judicial transfers and inconsistent rulings, creating instability and obstructing Plaintiff's access to a fair tribunal.

38. On August 23, 2024, after sixteen years on the domestic-relations bench and amid concerns about her conduct, Judge Loza was reassigned out of the division. The matter was reassigned to Judge Rosanna Fernandez.

39. On September 11, 2024, Plaintiff filed both a Motion to Reallocate Fees and a Motion to Rehear Proceedings Due to Medical Disability.

40. On October 2, 2024, Plaintiff filed an Emergency Motion to Suspend Respondent's Parenting Time due to renewed safety concerns for the child.

41. On October 10, 2024, Judge Fernandez denied the emergency motion and transferred the case back to Judge Loza without adequate procedural justification to hear a different motion.**(Exhibit X8)**

42. On October 23, 2024, Judge Regina Scannicchio issued a Transfer Order assigning the case to Calendar 93 (Loza), while acknowledging in the order itself that it was based on a mistaken ruling tied to clerical error. **(Exhibit X9)**

43. On November 4, 2024, Judge Scannicchio vacated her own transfer order, stating it had been issued in error. **(Exhibit X10)**

44. On November 7, 2024, Plaintiff received multiple conflicting orders—including a "Nunc Pro Tunc" correction attempting to retroactively alter a prior order. That same day, Judge

9

Fernandez abruptly recused herself, and Judge Scannicchio assumed full judicial responsibility for the case. **(Exhibit X11)**

45.     On November 11, 2024, court appointed pharmacologist Dr. O'Donnell submitted a sworn affidavit reaffirming Feliza Castro's drug-related risks and documenting GAL manipulation of evidence. Evaluator Finn and GAL Kuzniar continued suppressing these findings. **(Exhibit X13)**

46.     On December 9, 2024, in Kenton Girard v. Beermann LLP, et al., Case No. 1:24-cv-06882 (N.D. Ill.), the plaintiff alleged that Beermann LLP operated a judicial corruption enterprise within Cook County. The complaint included a statement attributed to Defendant Jonathan Steele: "Oh, we have Scannicchio -" we are good," describing it as evidence of improper influence involving Judge Scannicchio. **(Exhibit 5)**

47.     The Girard complaint further alleged that Judge Scannicchio knowingly issued rulings favoring Beermann, participated in improper case-routing, and contributed to a system where litigants opposing Beermann faced inflated fees, punitive orders, and obstructed access to justice. These allegations mirror the misconduct experienced by Plaintiff.

48.     On December 17, 2024, the court denied Plaintiff's Motion to Reallocate Fees, Motion for Rehearing Due to Medical Disability, Emergency Motion to Suspend Parenting Time, and request for an in-camera interview of the minor child—each denial issued without engaging the underlying evidence.

49.     On that same date, at Steele's request, the court imposed a "leave-of-court" restriction requiring Plaintiff to obtain judicial permission before filing any future pleadings. This punitive barrier was imposed solely due to Edward Engels unfamiliarity with efiling.

50.     Between March 2024 and September 2025, Respondent cycled through multiple

attorneys—including Beermann LLP, attorney Matt Farmer, and attorney Karen Conti—each escalating litigation costs and filings. Feliza Castro parted with Beermann LLP over fees, despite all the years of collusion by Beerman LLP with other state actors to help her he case covering up criminal activity and unfitness to be a Mother.

51. On June 18, 2025, counsel Karen Conti filed a motion seeking to enroll the minor child in a European boarding school, initiating an attempt to remove the child from U.S. jurisdiction. **(Exhibit X17)**

52. On July 9, 2025, Conti filed a second emergency motion seeking international relocation. **(Exhibit X18)**

53 On July 14, 2025, Judge Naomi Schuster, sitting in for Judge Scannicchio, denied Respondent's emergency motion, finding no legitimate emergency existed. Both times a neutral judge was assigned to hear an emergency motion they ruled against Feliza Castro**. (Exhibit X18)**

54. Throughout this period, Conti filed successive emergency motions, motions to modify orders, and motions to recuse judges, creating procedural instability and financial exhaustion.

55. On October 24, 2025 Karen Conti files Motion For Recusal or Disqualification of Judge Scannicchio. The latest filing now places both parties in agreement that the state court can no longer provide a fair tribunal, with Feliza Castro, through counsel Karen Conti, challenging Judge Scannicchio's impartiality due to the appearance of impropriety involving Beermann LLP. **(Exhibit X20)**

56. Collectively, these events demonstrate improper ex parte conduct, judicial irregularities, suppression of expert findings, retaliatory fee orders, selective enforcement of procedural rules, and restrictions on Plaintiff's access to the courts—constituting violations of

11

due process, equal protection, and the right to a fair tribunal.

## V.    JUDICAL ENTERPRISE ALLEGATIONS

57.    Plaintiff alleges the existence of a coordinated Judicial Enterprise operating within the Cook County Domestic Relations Division, comprised of private actors from Beermann LLP working in concert with state actors including GAL Pamela Kuzniar, evaluator Dr. David Finn, and sitting judges to predetermine outcomes, suppress evidence, and deprive Plaintiff and his minor child of constitutional rights. This enterprise functioned with continuity, shared purpose, and an agreed-upon narrative designed to insulate Respondent from accountability while targeting Plaintiff through procedural and financial coercion.

58.    GAL Pamela Kuzniar and evaluator Dr. David Finn acted as critical gatekeepers for the enterprise. Kuzniar repeatedly ignored or concealed Respondent's drug abuse, suppressed Dr. O'Donnell's findings, manipulated evidence, and consistently redirected scrutiny away from Respondent despite overwhelming indicators of unfitness. DR. Finn, aligned with Beermann for years issued custody evaluations that disregarded drug data, minimized safety risks, and reinforced predetermined positions favorable to Respondent and her attorneys. Their conduct was not negligent but coordinated, functioning to manufacture a false factual record that justified outcomes already chosen.

59.    Judicial officers further enabled and advanced the enterprise through selective rulings, improper reversals, delayed hearings, and inconsistent transfer orders designed to shield misconduct from scrutiny. Judge Loza engaged in ex-parte communications with Kuzniar, reinstated Respondent's parenting time despite cocaine use, and reversed emergency findings without a hearing. Judge Fernandez denied Plaintiff's emergency motions, ignored medical disability evidence, and transferred the case in a manner that protected GAL and evaluator

12

misconduct. Judge Scannicchio issued contradictory orders, used nunc pro tunc entries to mask procedural errors, and imposed filing restrictions on Plaintiff while excusing violations by Respondent and her counsel. **(Exhibits 8 – ex-parte)**

60.     These coordinated actions demonstrate a unified enterprise in which Beermann attorneys, Kuzniar, Finn, and participating judges each performed distinct roles: Beermann controlled litigation strategy; Kuzniar and Finn manipulated the evidentiary record; and judges issued rulings consistent with predetermined objectives. The enterprise's purpose was to suppress exculpatory evidence, obstruct due process, financially exhaust Plaintiff, and engineer a custody outcome disconnected from law, fact, or the safety of the minor child. This pattern constitutes collusion under color of law and satisfies the structural, continuity, and purpose requirements of a racketeering enterprise.

## VI.    THE HEALING CLINIC – RICO ENTERPRISE

61.     Plaintiff alleges the existence of a second criminal enterprise operating within the State of Illinois—primarily in Chicago and surrounding counties—known as The Healing Clinic Enterprise. This enterprise functioned by certifying, approving, and submitting fraudulent medical marijuana recommendations to the State of Illinois to unlawfully obtain medical cannabis cards for individuals who did not meet statutory requirements. These certifications were based on falsified records, nonexistent diagnoses, sham evaluations, and fabricated medical justifications.

62.     The Healing Clinic was a criminal enterprise led by Feliza Castro, Ross Morreale, and former physician Dr. Jonathan Spero, whose DEA registration and medical authority were exploited to sustain the operation. The enterprise generated revenue through fraudulent certifications and sham medical services while exposing the public to serious health risks.

13

63. The Healing Clinic Enterprise reportedly received political protection and influence from individuals including former State Representative Lou Lang and former Alderman Manny Flores, both political operatives who allegedly supported or enabled the unlawful cannabis-licensing scheme. Plaintiff alleges these officials exerted political influence to suppress regulatory scrutiny, protect the defendants' operations, and shield the enterprise from meaningful oversight or prosecution. Lou Lang later to support Judge Pamela Loza as Judge.

64. The Healing Clinic Enterprise's activities compromised the integrity of Illinois's Medical Cannabis Pilot Program, undermined public trust, created direct health dangers, and facilitated Respondent's long-term substance abuse. Defendants Feliza Castro and Ross Morreale involvement in and benefit from this enterprise contributed directly to the instability, addiction, and safety risks repeatedly ignored by GAL Pamela Kuzniar, evaluator Dr. David Finn, and the presiding judges within the Judicial Enterprise described above.

## VII. LEGAL STANDARD FOR ISSUANCE OF A TEMPORARY RESTRAINING ORDER

65. Federal Rule of Civil Procedure 65(b) authorizes this Court to issue a Temporary Restraining Order where immediate and irreparable injury, loss, or damage will result before the adverse party can be heard.

66. Courts within this Circuit hold that the standard for granting a Temporary Restraining Order is identical to the standard for granting a preliminary injunction. Charter Nat'l Bank & Tr. Co. v. Charter One Fin., Inc., No. 01 C 905, 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001).

67. Under Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008), a plaintiff seeking injunctive relief must demonstrate:

14

(a) a likelihood of success on the merits;

(b) a likelihood of irreparable harm in the absence of relief;

(c) that the balance of equities tips in the plaintiff's favor; and

(d) that an injunction is in the public interest.

68. Where constitutional rights are threatened or impaired, irreparable injury is presumed. Elrod v. Burns, 427 U.S. 347, 373 (1

## VIII. IMMINENT AND IRREPARABLE HARM

69. Plaintiff faces immediate and irreparable injury absent emergency relief. Defendant Feliza Castro and her paramour Ross Morreale are actively pursuing removal of the minor child from Illinois and the United States, including enrollment in a foreign boarding school, which would permanently deprive this Court of jurisdiction.

70. The loss of jurisdiction over a minor child constitutes irreparable harm as a matter of law, incapable of being remedied by monetary damages.

71. Plaintiff and the minor child are further subject to ongoing retaliation, intimidation, suppression of evidence, and coordinated extrajudicial conduct designed to obstruct access to courts and frustrate constitutional rights.4. These harms are ongoing, escalating, and time-sensitive, and will occur before Defendants can be heard unless this Court intervenes immediately.

72. Irreparable harm exists where there is no adequate remedy at law and injuries cannot be fully compensated through monetary damages. Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312 (8th Cir. 2009).

15

## IX. LIKELIHOOD OF SUCCESS ON THE MERITS (THRESHOLD SHOWING)

73. Plaintiff has demonstrated a strong likelihood of success on claims arising from independent federal constitutional violations, including:

  a.  deprivation of procedural and substantive due process

  b.  denial of equal protection through selective enforcement and favoritism

  c.   retaliation and obstruction of court access; and

  d.  the conduct challenged here is extrajudicial, not judicial. Plaintiff does not challenge state-court rulings, but rather private and quasi-official actions taken outside lawful judicial functions, which are not protected by judicial or quasi-judicial immunity.

74. Irreparable harm exists where there is no adequate remedy at law and injuries cannot be fully compensated through monetary damages. Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312 (8th Cir. 2009).

## X. BALANCE OF EQUITIES AND PUBLIC INTEREST

75. The balance of equities weighs decisively in Plaintiff's favor. Defendants suffer no legitimate harm from being restrained from unlawful conduct, retaliation, or child removal without court authority.

  (a)  The public interest is always served by:

  (b)  protecting minor children from jurisdictional flight and harm;

  (c)  preserving constitutional rights; and

  (d)  preventing extrajudicial abuse of power.

16

76. Its always in the public interest to prevent the violation of constitutional rights. Connection Distrib. Co. v. Reno, 154 F.3d 281 (6th Cir. 1998); Dodds v. U.S. Dep't of Educ., 845 F.3d 217, 222 (6th Cir. 2016).

77. The Constitution "is a law for rulers and people, equally in war and in peace." Ex parte Milligan, 71 U.S. 2, 120–21 (1866).

## XI.    RELIEF CAN BE PROVIDED BY THIS COURT WITHOUT INTRUDING UPON STATE-COURT JURISDICTION

78. The relief requested herein is squarely within this Court's authority under Federal Rule of Civil Procedure 65 and does not require this Court to review, reverse, modify, or interfere with any state-court custody, parenting-time, or domestic-relations order.

79. Plaintiff does not seek federal appellate review of any state-court judgment. All existing state-court orders remain fully enforceable and undisturbed.

80. Instead, Plaintiff seeks narrow, forward-looking injunctive relief directed solely at extrajudicial conduct—including retaliation, intimidation, evidence suppression, jurisdictional flight, and coordinated enterprise activity—that occurs outside lawful judicial proceedings and outside any protected judicial function.

81. Federal courts possess clear authority to enjoin private actors and state actors acting outside their lawful roles from engaging in unconstitutional conduct, even where related state proceedings exist. The requested relief targets independent federal violations, not judicial decision-making.

82. Enjoining Defendants from:

a. removing the minor child from Illinois or the United States without lawful authorization

17

b.     engaging in retaliation, intimidation, or evidence suppression

c.     participating in undisclosed or improper ex parte coordination; and furthering enterprise activity occurring outside formal judicial proceedings does not alter custody, does not modify parenting time, and does not interfere with any state-court adjudication.

d.     The requested Temporary Restraining Order is therefore procedurally proper, jurisdictionally sound, and narrowly tailored to preserve the status quo, protect constitutional rights, and prevent imminent irreparable harm pending a preliminary-injunction hearing.

83.     Because Plaintiff seeks only to restrain unlawful conduct occurring outside judicial proceedings, this Court's intervention is consistent with Rule 65, Rooker–Feldman, Younger, and the domestic-relations exception.

## XII.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THEIR CONSTITUTIONAL CLAIMS

84.     Plaintiff has demonstrated a substantial likelihood of success on the merits of his federal constitutional claims arising from extrajudicial conduct by Defendants that occurred outside any lawful judicial decision-making.

85.     Plaintiff possesses clearly established constitutional rights, including:

a.     the Fourteenth Amendment right to procedural and substantive due process

b.     the right to equal protection of the laws;

c.      the First and Fourteenth Amendment rights to meaningful access to the courts; and

d.      the fundamental liberty interest in the care, custody, safety, and familial association of his minor child.

e.      The conduct challenged herein does not seek review or reversal of any state-court judgment. Rather, Plaintiff challenges independent unconstitutional acts, including retaliation, selective enforcement, evidence suppression, intimidation, and coordinated off-record activity, all of which fall outside protected judicial functions.

86.      Plaintiff is likely to prove that Defendants acted under color of state law and in concert with one another to deprive Plaintiffs of constitutional protections, including through: suppression and manipulation of material evidence;

a.      distortion of expert findings and evaluations;

b.      retaliatory filings and procedural obstruction;

c.      coordinated extrajudicial communications and influence;

d.      selective enforcement and favoritism inconsistent with equal protection.

87.      Such conduct, when taken outside legitimate judicial proceedings, is not protected by judicial or quasi-judicial immunity and is actionable under 42 U.S.C. §§ 1983 and 1985.

88.      Courts have repeatedly recognized that even brief violations of constitutional rights constitute irreparable harm and support injunctive relief. Where constitutional deprivations are ongoing or imminent, the likelihood of success on the merits weighs heavily in favor of

19

issuing a temporary restraining order.

89.     Plaintiff is therefore likely to succeed in proving that Defendants' extrajudicial actions violated Plaintiffs' constitutional rights and continue to pose an immediate threat of further harm absent emergency injunctive relief.

## XIII   CAUSE OF ACTION

**Count 1:** Violation of the Fourteenth Amendment - Procedural & Substantive Due Process

42 U.S.C. § 1983

(Against all non-immune Defendants acting outside judicial functions)

90.     Plaintif re-alleges paragraphs  as though fully set forth herein.

91.     Plaintiff possesses a clearly established fundamental liberty interest in the care, custody, companionship, safety, and familial association of his minor child.

92.     Defendants including Feliza Castro, Ross Morrelae  Pamela Kuzniar, Dr. David Finn, Thomas Field and Jonathon Steele engaged in extrajudicial conduct that interfered with Plaintiff's parenting rights outside legitimate judicial decision-making. Their conduct included:

      a.     suppressing material evidence;

      b.     manipulating expert evaluations;

      c.     falsifying or distorting factual records;

      d.     intimidating Plaintiff or influencing witnesses;

      e.     interfering with Plaintiff's ability to present evidence or access the courts;

      f.     coordinating private actions to predetermine outcomes.

93.     These actions were not judicial rulings and do not challenge, review, or seek reversal of any state-court judgment. Therefore, these claims fall outside the Rooker-Feldman doctrine and concern independent federal constitutional violations.

20

94. Defendants acted arbitrarily, maliciously, and with deliberate indifference to the constitutional rights of Plaintiff and the minor child.

95 As a direct and proximate result, Plaintiff suffered deprivation of familial rights, emotional harm, financial injury, and ongoing interference with his protected liberty interests.

**Count Two:** Equal Protection - Selective Enforcement & Discriminatory Treatment

42 U.S.C. § 1983

(Against non-immune Defendants)

96. Plaintiff re-alleges paragraphs 1-95

97 Defendants engaged in unlawful, extrajudicial discriminatory treatment toward Plaintiff by selectively enforcing rules, concealing evidence and applying different standards to Plaintiff than to similarly situated Defendant Feliza Castro.

98. This discriminatory treatment included:

a. excusing Castro's failed and missed drug tests;

b. suppressing expert findings favorable to Plaintiff;

c. imposing punitive burdens on Plaintiff not imposed on others;

d. manipulating evidence through private coordination;

e. treating Plaintiff differently based on favoritism, retaliation, or enterprise affiliation.

99. These acts occurred outside judicial rulings and therefore do not implicate Rooker-Feldman.

100 Defendants lacked any rational basis for their differential treatment, resulting in unlawful denial of equal protection.

**Count Three:** Retaliation & Denial of Access to Courts

42 U.S.C. § 1983

101.   Plaintiff re-alleges all pertinent paragraphs..

102.   Plaintiff engaged in protected activities, including reporting misconduct, filing motions, seeking the child's safety, and exposing enterprise-based corruption.

103.    In retaliation, Defendants-including Kuzniar, Finn, Castro, Morreale, Field, and

104.   Jonathon Steele engaged in extrajudicial conduct designed to obstruct Plaintiff's ability to be heard in any judicial forum.

      a.   Retaliatory acts included:

      b.   evidence suppression;

      c.   initiation of false narratives;

      d.   concealed coordination intended to predetermine outcomes;

      e.   interference with Plaintiff's filings or participation;

      f.   intimidation or coercion;

      g.   misuse of out-of-court influence.

105.   These actions were not judicial acts, are not protected by immunity, and do not fall under Rooker-Feldman.

106.   As a result, Plaintiff's First and Fourteenth Amendment rights were violated.

**Count Four:** Conspiracy to Interfere with Civil Rights

42 U.S.C. § 1985(3)

      a.   Plaintiff realleges all pertinent paragraphs

22

b. Defendants knowingly conspired - explicitly or implicitly—to deprive Plaintiff of equal protection, due process, and meaningful court access. Overt acts in furtherance of the conspiracy included:

c. suppression of material evidence;

d manipulation of evaluations and professional reports;

e warping the factual record through concealment

f. coordinated off-record communications;

**Count Five:** Declaratory Relief 28 U.S.C. §§ 2201–2202

107.. Plaintiff re-alleges paragraphs 1-106.

108. Plaintiff does not seek review or reversal of any state-court order. The relief sought concerns only independent unconstitutional acts, making Rooker–Feldman inapplicable.

**Count Six:** Injunctive Relief – TRO & Preliminary Injunction Fed. R. Civ. P. 65

109. Plaintiff re-alleges all pertinent paragraphs.

110. Plaintiff seeks narrowly tailored injunctive relief restricting Defendants from engaging in retaliation, enterprise activity, intimidation, or interference with federal rights.

. Plaintiff expressly does not seek modification, reversal, or review of any state-court custody ruling.

111. All requested injunctive relief targets private misconduct and constitutional violations, not judicial acts.

**XIV PRAYER FOR RELIEF**

112. Plaintiff respectfully seeks narrowly tailored emergency relief under Rule 65 that

does not request this Court to review, reverse, modify, overturn, void, or interfere with any existing or future state-court custody or parenting-time order. Consistent with the Rooker–Feldman doctrine, Plaintiff does not seek federal appellate review of any state-court judgment but instead seeks to restrain extrajudicial misconduct by Defendants that falls outside the legitimate cope of judicial or quasi-judicial functions, and which threatens imminent, irreparable harm. Plaintiff does not seek federal modification or enlargement of any state-court custody or parenting time order, all of which remain fully enforceable. This action concerns only extrajudicial misconduct and unconstitutional acts.

114. Plaintiff seeks a Temporary Restraining Order prohibiting Defendants Feliza Castro and Ross Morreale, and any individuals acting in concert with them, from removing or attempting to remove the minor child from the State of Illinois or the United States outside the authority of any court of competent jurisdiction. This relief prevents irreparable injury and does not disturb any state-court ruling.

115. Plaintiff seeks a TRO prohibiting all Defendants from engaging in retaliation, witness intimidation, obstruction, evidence suppression, or other enterprise-related conduct that occurs outside properly noticed judicial proceedings and outside their judicially authorized capacities. These acts are not protected under Rooker–Feldman, Younger, or judicial immunity because they involve unlawful behavior independent of state judgments.

116. Plaintiff requests a TRO prohibiting all Defendants from engaging in undisclosed, concealed, or improper ex parte communications or coordination relating to Plaintiff or the minor child outside the judicial process. This injunctive request does not challenge any judicial decision, but restrains unconstitutional conduct that federal courts have clear jurisdiction to address.

117. Plaintiff seeks an injunction preventing Defendants from engaging in extrajudicial influence, fraudulent documentation, manipulation of evaluations, suppression of expert findings, or other coordinated enterprise activity, none of which constitutes a state-court judgment and therefore falls outside the scope of the Rooker–Feldman doctrine.

118. This TRO request is narrowly tailored to prevent imminent and irreparable constitutional harm, to maintain federal jurisdiction, and to restrain private misconduct and unlawful coordinated activity, rather than challenge, review, or disturb any order of the Circuit Court of Cook County. Accordingly, this request fully complies with Rooker–Feldman, Younger, and the domestic-relations exception.

119. Given the emergency posture of this motion and the impartibility of recounting more than a decade of misconduct in this limited filing, Plaintiff focuses on the more recent events demonstrating immediate and irreparable harm.

120.. Plaintiff will supplement the record for more detailed Defendant with specific factual allegations and supporting evidence in subsequent filings as this matter proceeds.

## XV.   VERIFICATION

I, Edward Engels, am the Plaintiff in this action. I have read the foregoing Complaint and know the contents thereof. The statements made in the Complaint are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 12 day of ___Jan___, 2026, in Chicago, Illinois.

Edward Engels

Plaintiff, Pro Se

26

27