BC

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD ENGELS, | | |
| | ) | |
| Plaintiff, | ) | Case No. 1:26-cv-00359 |
| | ) | |
| v. | ) | Hon. Georgia N. Alexakis, |
| | ) | Judge Presiding. |
| FELIZA CASTRO, ROSS MORREALE, | ) | |
| PAMELA KUZNIAR, DR. DAVID FINN, | ) | |
| THOMAS FIELD, JONATHAN STEELE, | ) | |
| | ) | |
| Defendants. | ) | |

RECEIVED
PLG
9/22/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# EXHIBIT A

## FIRST AMENDED COMPLAINT AND JURY DEMAND

ATTACHMENT TO

**PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)**

Submitted for the Court's consideration in connection with Plaintiff's request for leave to amend.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| EDWARD ENGELS, | | |
| | ) | |
| Plaintiff, | ) | Case No. 1:26-cv-00359 |
| | ) | |
| v. | ) | Hon. Georgia N. Alexakis, |
| | ) | Judge Presiding. |
| FELIZA CASTRO, ROSS MORREALE, | ) | |
| PAMELA KUZNIAR, DR. DAVID FINN, | ) | |
| THOMAS FIELD, JONATHAN STEELE, | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

## I. NATURE OF THE ACTION

1. Plaintiff Edward Engels brings this action in his individual capacity under 42 U.S.C. § 1983 for alleged independent violations of his First and Fourteenth Amendment rights.

2. Plaintiff does not ask this Court to determine custody, parenting time, school placement, relocation, or the correctness of any judgment or order of the Circuit Court of Cook County. Plaintiff seeks damages for independently actionable conduct alleged below.

3. Plaintiff recognizes that an unfavorable recommendation, erroneous professional judgment, successful advocacy, or favorable state-court ruling does not by itself establish liability under § 1983. His claims are limited to defendant-specific conduct alleged to have occurred outside protected functions or through willful joint participation with a state actor.

4. Plaintiff brings no claim on behalf of the minor child.

## II. JURISDICTION AND VENUE

5. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under 42 U.S.C. § 1983.

6. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events alleged occurred in Cook County, Illinois.

7. Plaintiff seeks no appellate review, reversal, modification, or enforcement of a state domestic-relations judgment.

## III. PARTIES

8. Plaintiff Edward Engels is an adult resident of Cook County, Illinois and father of the minor child involved in Cook County Case No. 2013 D 080356.

9. Defendant Feliza Castro is the mother of the minor child and is sued in her individual capacity.

10. Defendant Ross Morreale was Castro's partner during relevant periods and is sued in his individual capacity.

11. Defendant Pamela Kuzniar is an Illinois attorney who served as court-appointed Guardian ad Litem. Plaintiff sues her only for conduct alleged to fall outside protected GAL functions or to constitute actionable joint conduct.

12. Defendant Dr. David Finn is a psychologist who served as a court-appointed evaluator. Plaintiff sues him only for conduct alleged to fall outside protected evaluative functions or to constitute actionable joint conduct.

13. Defendant Thomas Field is an attorney who represented Castro during portions of the underlying proceeding and is sued in his individual capacity.

14. Defendant Jonathan Steele is an attorney who represented Castro during portions of the underlying proceeding and is sued in his individual capacity.

## IV. RELEVANT BACKGROUND

15. On September 2, 2022, Kuzniar was reappointed GAL. During the same litigation cycle Finn was appointed to perform a court-ordered custody evaluation.

16. Plaintiff alleges that Kuzniar insisted upon appointment of a pharmacologist to address the parties' drug use, prescription medications, testing, and related concerns. Court-appointed pharmacologist Dr. James O'Donnell thereafter evaluated substance-use issues.

17. On June 29, 2022, IDFPR entered an order concerning Dr. Jonathan Spero's medical license after finding that he prescribed Schedule II controlled substances to F.C. without an established physician-patient relationship or requisite assessment. Plaintiff alleges this information and related communications were provided to Kuzniar and Finn.

18. Plaintiff possessed 2016 text messages in which Spero and Castro discussed access to Spero's prescription pad, his signature, his DEA registration number, Vicodin, and Xanax. Plaintiff alleges these communications were among materials provided to the court-appointed professionals.

19. Castro was ordered to submit to a drug test by September 12, 2022 but appeared for collection on September 13. Plaintiff's then-counsel Linda Epstein notified Kuzniar and Castro's then-counsel Dean Taradash of the missed deadline.

20 . The September 13, 2022 test was positive for ketamine and other substances. Epstein thereafter sought an explanation from Kuzniar and opposing counsel concerning the ketamine result.

21 . On March 10, 2023, court-appointed parenting coach Pamela Rak sent a letter to Kuzniar and Finn documenting Castro's repeated failure to participate in court-ordered parenting coaching despite scheduling accommodations, reminders, and confirmations.

22. On April 19, 2023, Castro tested positive for cocaine during parenting time. Judge Joy Rosenberg, sitting temporarily on the matter, found a genuine emergency and suspended Castro's parenting time after considering an operative record offered to explain the result.

23 . On April 25, 2023, O'Donnell issued a report addressing Castro's substance-use history and parenting fitness. Plaintiff alleges O'Donnell found Castro "not fit to parent" and recommended supervised parenting time and consequences for noncompliance.

24. These background allegations identify information Plaintiff alleges was available to Kuzniar and Finn. Plaintiff does not allege that their failure to adopt his interpretation of this evidence is, by itself, a federal constitutional violation.

25. Between September 2022 and February 2024, Plaintiff alleges Castro produced repeated positive court-ordered drug screens and repeatedly failed to comply with required testing call-ins. The prior pleading alleged approximately thirty-five positive screens and seventeen missed call-ins out of twenty-six required dates. Plaintiff alleges Kuzniar and Finn had access to the testing history while continuing in their court-appointed roles.

26. Plaintiff further alleges that videos depicting Castro using substances while the minor child was present were provided to Kuzniar and Finn. Plaintiff pleads the existence and alleged delivery of those materials as part of the information available to the court-appointed professionals; he does not allege that the professionals' failure to adopt his interpretation of the videos, standing alone, creates federal liability.

27. Plaintiff alleges that after the repeated testing history described above, Kuzniar later supported discontinuation of Castro's court-ordered drug testing. Plaintiff pleads that sequence as factual context relevant to his allegations concerning the handling of specific evidence.

28. On May 12, 2023, the minor child sent Plaintiff contemporaneous text messages during her time with Castro and Morreale expressing substantial distress, stating among other things that she did not want to be there and questioning why Kuzniar and Finn were helping Castro. Plaintiff alleges these communications were relevant to information available concerning the child's circumstances and preferences.

29. Plaintiff possesses contemporaneous text-message communications from March through June 2023 in which the minor child communicated directly with Defendant Kuzniar concerning her living circumstances. In those communications, the minor child repeatedly expressed substantial distress concerning residing with Castro, repeatedly stated that she did not want to remain there, expressed a desire to return to Plaintiff's home, and directly questioned Kuzniar concerning why she was being required to remain in that environment.

30. T he communications reflect direct exchanges between the minor child and Kuzniar. On March 3–4, 2023, the minor child initiated contact with Kuzniar and Kuzniar responded by arranging a telephone call. In subsequent messages during March and June 2023, the minor child continued communicating directly to Kuzniar substantial dissatisfaction and distress concerning her living circumstances. Plaintiff alleges these communications provided Kuzniar with direct, contemporaneous information from the child herself rather than information filtered through either parent.

31. Plaintiff alleges that the minor child's expressions of distress and opposition were not isolated to a single communication or year but were repeatedly expressed over the course of the underlying proceedings. Plaintiff alleges that this recurring history materially contrasts with the characterization of the minor child's experiences and preferences subsequently presented in Kuzniar's reporting. Kuzniar's June 25, 2026 Supplemental GAL Report attributes materially different statements and preferences to the minor child, including statements concerning her parenting circumstances, her desire to attend TASIS, and her desire for a 'fresh start.' Plaintiff further alleges that the minor child subsequently denied to Plaintiff material statements and preferences attributed to her in that Report.

32. Plaintiff does not allege that Kuzniar was constitutionally required to adopt the minor child's preferred parenting arrangement or that a difference between a child's statements at different times independently establishes misconduct. Plaintiff alleges that the contemporaneous communications, the recurring expressions he alleges occurred over multiple years, the disputed 2026 attributions, and Plaintiff's repeated requests for direct in-camera review are relevant to Kuzniar's actual knowledge and to Plaintiff's allegations concerning the accuracy, attribution, and subsequent use of statements purportedly made by the minor child.

33. Plaintiff also alleges that on March 18, 2023, the minor child communicated directly with Finn and expressed substantial distress concerning her living circumstances. These communications are pleaded as information allegedly available to Finn during his court-appointed work and not as a separate claim belonging to the child.

## V. KETAMINE PROTOCOL

34. On January 20, 2023, Kuzniar transmitted a proposed drug-testing order to the court. The proposed testing panel omitted ketamine notwithstanding Castro's earlier positive ketamine result.

35. That same day, Epstein objected by email and specifically asked, "What about Ketamine, or other alleged drugs."

36. Plaintiff alleges this communication gave Kuzniar direct contemporaneous notice that counsel disputed the omission before the protocol was implemented.

37. Plaintiff further alleges the proposed order was sent to the court without first being circulated to counsel for review and comment, contrary to the practice counsel had been following.

38 . Plaintiff does not allege that every recommendation concerning testing falls outside a GAL's protected role. He pleads this episode because it involved a specific testing term, a documented prior positive result, and a contemporaneous written objection identifying the omission.

## VI. JUNE 2023 APPEARANCE

39. On June 15, 2023, Epstein emailed Kuzniar and Taradash objecting that they had appeared before Judge Loza after Epstein advised that she could not appear. Epstein stated she had not been notified of the intended appearance, objected to discussion of the case in her absence, and sought an explanation.

40. Plaintiff alleges the episode resulted in an order limiting further discovery concerning medical records related to Castro's April 2023 positive cocaine test.

41. Plaintiff pleads the communication and resulting sequence as a specific event. He does not allege as fact that anyone falsely represented Epstein's consent unless evidence establishes that fact.

## VII. OTHER SAFETY AND VIOLENCE INFORMATION

42. Plaintiff alleges that Spero sent contemporaneous communications describing Castro as violent during their relationship and that other records reflected prior incidents involving alleged violence or police involvement.

43. In 2018, Morreale sought judicial protection against Castro and alleged domestic violence, threats, drug-related conduct involving mushrooms, and safety concerns. Plaintiff pleads those allegations as historical context and does not ask this Court to adjudicate whether the allegations in that proceeding were true.

44. Plaintiff alleges that the minor child sent communications to Finn and Plaintiff expressing substantial distress concerning her living circumstances. Plaintiff pleads those communications as information allegedly available to the evaluator, not as a claim belonging to the child.

## VIII. PAMELA KUZNIAR — SPECIFIC ALLEGED CONDUCT

45. Plaintiff alleges Kuzniar participated in preparation and transmission of the January 20, 2023 proposed drug-testing order and had contemporaneous written notice of the ketamine objection.

46. Plaintiff alleges Kuzniar participated in the June 2023 appearance before Judge Loza after Epstein had advised she could not appear.

47. Immediately after the March 5, 2024 hearing, Plaintiff alleges Kuzniar and Judge Pamela Loza entered chambers together for an off-record discussion observed by court

personnel. Plaintiff was not present and alleges the substance of the discussion was not disclosed to him.

48. Plaintiff pleads this specific, dated, off-record interaction as part of his joint-action theory. Plaintiff recognizes that ordinary communications between a GAL and appointing court may be protected; his claim depends upon the function, purpose, and substance of the particular interaction and whether it furthered an independently unconstitutional objective.

49. On June 25, 2026, Kuzniar issued a Supplemental GAL Report supporting the minor child's enrollment at TASIS boarding school or as a day-school attendee. Plaintiff alleges that the Report attributed dates, times, meetings, statements, and preferences to the minor child that Plaintiff contends were inaccurate or falsely attributed.

50. Plaintiff does not base liability merely on the recommendation in that report. He pleads the alleged fabrication of objective meeting details and attributed statements as distinct factual conduct, subject to proof, and alleges that intentional fabrication is materially different from professional judgment about disputed facts.

51. Kuzniar's June 25, 2026 Supplemental GAL Report states in its summary of contacts that a video conference with the minor child occurred on June 22, 2026. In the narrative portion, however, the report states that Kuzniar and the child met by FaceTime on Monday, June 23, 2026. Plaintiff alleges this is an objective internal discrepancy concerning the date of the same purported contact.

52. The Supplemental GAL Report attributes detailed statements to the minor child concerning TASIS, international schooling, her relationship with Plaintiff, her desire for a 'fresh start,' and her preferences concerning schooling abroad. Plaintiff alleges that the minor child subsequently denied to Plaintiff making the statements attributed to her in the report.

53. Plaintiff therefore alleges, based upon the minor child's denials, that material statements in the Supplemental GAL Report were false or inaccurately attributed to her. Plaintiff alleges the discrepancy is material because the report expressly relied upon the child's purported preferences in supporting enrollment at TASIS.

54. Plaintiff does not allege that an adverse GAL recommendation itself is actionable. His allegation concerns the asserted creation or inaccurate attribution of objective meeting details and purported statements used as factual predicates for the recommendation. Whether those acts occurred intentionally and whether they fall outside protected GAL functions are matters Plaintiff expects to establish through evidence.

55. Plaintiff further incorporates the subsequent in-camera proceedings described in Paragraphs 69 through 78, including Castro's reliance upon the disputed statements in opposing Plaintiff's request that the state court hear directly from the minor child.

56. Plaintiff expressly does not base liability on Kuzniar's recommendations, evaluation of conflicting evidence, litigation position, or failure to agree with Plaintiff. Liability is asserted only for conduct ultimately shown to fall outside protected GAL functions or constitute actionable joint conduct.

## IX. DR. DAVID FINN — SPECIFIC ALLEGED CONDUCT

57. Finn performed a court-appointed custody evaluation. Plaintiff does not seek damages merely because he disagrees with Finn's evaluation, conclusions, or recommendations.

58. Plaintiff alleges Finn received or had available information concerning Castro's drug-testing history, the Rak letter, O'Donnell's findings, and communications from the minor child expressing substantial distress.

59. Plaintiff alleges Finn's evaluation did not meaningfully address material findings of O'Donnell and Rak that Plaintiff contends were inconsistent with Finn's ultimate conclusions. This allegation supplies context and is not, standing alone, the basis for liability.

60. Plaintiff later obtained sworn testimony from a 2016 deposition in another matter. Finn testified that he had dealt with attorney Jared Pinkus's firm Beermann LLp in an estimated eight to twelve matters and had been selected as an expert. When asked whether he had ever recommended contrary to the position taken by Pinkus's (Beermann) client in those selected-expert matters, Finn answered, "I don't believe so," while stating he would need to review his records to verify that recollection.

61. Plaintiff does not allege that this testimony, standing alone, proves conspiracy or makes Finn liable for his court-ordered evaluation. He alleges it as factual context concerning repeat professional interactions between Finn and Beermann attorneys.

62. On July 18, 2023, Finn emailed Plaintiff and Castro concerning payment of his court-appointed evaluation fees and copied Kuzniar. Finn wrote that, in paying the full remaining balance, 'it appears as if Ross has overpaid Feliza's pro-rata share of the current amount due,' and stated that after Plaintiff submitted his pro-rata payment Finn would refund Morreale's overpayment.

63. Plaintiff alleges this contemporaneous communication establishes that Morreale, although not a party to the domestic-relations proceeding, personally paid funds to the court-appointed evaluator in connection with Castro's allocated share of the evaluation expense, and that Kuzniar was contemporaneously copied on the communication. Plaintiff does not allege that paying another person's professional fee, standing alone, establishes state action or an unlawful agreement.

64. Plaintiff alleges any claim against Finn is limited to conduct ultimately shown to have been outside the neutral evaluative function for which he was appointed or to have constituted knowing joint participation in an independently unconstitutional objective.

65. Finn submitted his evaluation on July 19, 2023. Plaintiff alleges that he did not possess the factual basis for certain allegations concerning Finn's repeat relationship with Beermann attorneys until he later obtained the 2016 deposition material. Plaintiff does not rely on a continuing-violation label merely to revive otherwise time-barred conduct.

## X. MARCH 5, 2024 AND SUBSEQUENT EVENTS

66. On March 5, 2024, Plaintiff, then represented by counsel, entered an agreed order in the state proceeding. Plaintiff does not ask this Court to invalidate or modify that order.

67. Immediately after the hearing, Plaintiff alleges Kuzniar and Judge Loza entered chambers together for the off-record discussion described above.

68. On April 9, 2024, Castro, through Steele, filed a relocation-related motion. Plaintiff pleads that filing as chronology and does not contend that filing a relocation motion was itself unconstitutional.

69. Plaintiff repeatedly sought an in-camera interview of the minor child so that the state court could hear directly from her concerning her experiences and preferences. On October 21, 2024, Plaintiff filed an Emergency Motion for In Camera Interview of the Minor Child. The state court ultimately denied that motion on December 17, 2024.

70 . Plaintiff renewed his request for an in-camera interview in June 2026. On June 10, 2026, Plaintiff filed an Emergency Motion for In Camera Interview of the Minor Child and for Exclusion of Guardian ad Litem from the In Camera Proceeding. On June 11, 2026, the state court continued that request to August 5, 2026.

71. The circumstances subsequently changed when Kuzniar issued her June 25, 2026 Supplemental GAL Report. The Report attributed numerous detailed conversations, statements, and preferences to the thirteen-year-old minor child. Plaintiff alleges that the minor child subsequently disputed and denied material statements and preferences attributed to her in the Report.

72. On August 3, 2026, Plaintiff therefore filed a Second Motion for an In Camera Interview. That motion specifically identified disputed statements associated with purported contacts on January 29, 2025, June 4, 2025, August 1, 2025, and June 22–23, 2026. Plaintiff requested that the state court hear directly from the minor child concerning whether the identified meetings occurred, what was actually discussed, whether statements attributed to her accurately reflected her actual words and intended meaning, and her present preferences concerning residence, education, and international relocation.

73. Plaintiff's Second Motion also identified an inconsistency appearing on the face of Kuzniar's Supplemental Report. The Report's list of contacts identifies a video conference with the minor child on June 22, 2026, while its narrative describes a FaceTime meeting on "Monday June 23, 2026." Plaintiff alleged that June 22, 2026 was Monday and June 23 was Tuesday, and that both descriptions therefore could not accurately identify the same meeting.

74. Castro opposed Plaintiff's Second Motion. In her September 8, 2026 Response, Castro argued that an in-camera interview was unnecessary and potentially detrimental because Kuzniar had already conducted an investigation and reported the minor child's position. Castro specifically relied upon Kuzniar's representation that the minor child's preference was to attend TASIS and that the child's reasoning was "clear and persuasive." Plaintiff alleges, however, that the minor child denies the material statements and preferences attributed to her by Kuzniar.

75. Plaintiff alleges that these circumstances are relevant because the statements attributed to the minor child were not confined to Kuzniar's Report; they were subsequently relied upon to oppose Plaintiff's attempt to have the child communicate directly with the state court.

76. The underlying domestic-relations proceeding remains pending. Castro's April 13, 2026 Two-Count Verified Petition seeks modification of parenting time in the event of international-school enrollment or, alternatively, relocation of the minor child. The relocation/international-school dispute is presently scheduled for trial in November 2026.

77. Plaintiff alleges, on information and belief, that the international-school proposal forms part of a broader effort by Castro and Morreale to establish residence in Europe with the minor child. Plaintiff disputes the asserted basis for the proposed international move and will litigate the merits of international enrollment and relocation in the pending state-court proceeding.

78. Plaintiff does not ask this Court to conduct an in-camera interview, determine the minor child's actual preferences, determine whether TASIS or another international school is appropriate, decide whether relocation should occur, modify parenting time, or review or reverse the state court's handling of Plaintiff's in-camera requests. Plaintiff pleads these events as factual context concerning the alleged creation, attribution, transmission, and subsequent use of materially inaccurate information and the independent federal injuries alleged herein.

79. On December 17, 2024, Steele requested an order requiring Plaintiff to obtain leave of court before filing future pleadings. The state court granted a filing restriction applicable to Plaintiff.

80 . Plaintiff alleges the restriction impaired his ability to place matters before the state court. Plaintiff does not allege that Steele became a state actor merely because he requested relief that the judge granted.

81. The filing restriction required Plaintiff to submit proposed pleadings for judicial review before they could be filed. The June 25, 2026 Supplemental GAL Report itself records that on December 5, 2025 Plaintiff's Motion to Lift Filing Restrictions and his Motion to Modify the Prior Order Restricting Communication and Restore Electronic Contact with the Minor Child were 'served but not filed.'

82. The same report records that on December 9, 2025 the state court addressed three unfiled submissions: the motion to lift filing restrictions was denied; Plaintiff was granted leave to file another proposed motion; and the communication motion was treated as moot. Plaintiff pleads these events as concrete examples of the restriction's operation and resulting delay or screening of his attempts to place matters on the docket.

83 . Plaintiff does not ask this Court to vacate the December 17, 2024 restriction. He alleges damages arising from the conduct that produced and implemented the restriction, to the extent that conduct is ultimately proven to satisfy the requirements of § 1983.

84 . Plaintiff does not rely on allegations made in Girard v. Village of Glencoe as adjudicated facts. Any allegation attributed to that separate pleading is treated only as an unproven allegation and is not necessary to the claims pleaded here.

## XI. THOMAS FIELD AND JONATHAN STEELE

85. Field and Steele acted as private attorneys for Castro during portions of the underlying proceeding. Plaintiff does not allege that either became a state actor merely by

representing Castro, filing motions, appearing in court, advocating a position, or obtaining favorable rulings.

86. Plaintiff alleges liability against Steele or Field under § 1983 only to the extent evidence establishes an actual agreement or mutual understanding with an identified state actor to accomplish an unconstitutional objective and willful participation in an overt act pursuant to that agreement.

87. The filing restriction and surrounding chronology are alleged as circumstances relevant to that inquiry, not as substitutes for the required agreement.

88. Ordinary private advocacy is excluded from Plaintiff's theory of liability.

89. Plaintiff alleges that during an earlier litigation cycle Kuzniar appeared in the courthouse hallway and courtroom in connection with proceedings in which Thomas Field represented Castro. Plaintiff's historical materials describe Kuzniar as seated alongside Field before the court entered the order reappointing her. Plaintiff pleads this only as chronology and does not contend that physical proximity or representation alone establishes an agreement.

90. Plaintiff further alleges that Field and Steele participated in communications and litigation activity involving Kuzniar and Finn during Castro's representation. Because private attorneys do not become state actors merely through advocacy or contact with court-appointed professionals, Plaintiff limits any claim against Field to conduct for which discovery or admissible evidence establishes an actual agreement with an identified state actor and personal participation in an unconstitutional objective.

91 . Plaintiff further alleges, on information and belief, that Kuzniar has maintained a longstanding personal relationship with members of Field's family extending back decades and predating the litigation. Plaintiff's basis for this allegation includes repeated statements made by

Castro to Plaintiff over a period of years in which Castro invoked or boasted about that relationship in connection with the underlying dispute.

92. Plaintiff alleges that this preexisting relationship is relevant only when considered together with the specific litigation-cycle conduct pleaded herein, including repeated interactions between Field and Kuzniar and Plaintiff's allegation that evidence adverse to Castro concerning substance use, violence, and parenting fitness was omitted, minimized, or not pursued during cycles in which Field represented Castro and Kuzniar served as GAL. Plaintiff does not allege that a friendship or family relationship, standing alone, establishes state action.

93. Plaintiff alleges that the repeated relationship and conduct provide circumstantial support for his claim of coordination, but recognizes that § 1983 liability against Field ultimately requires proof of a concerted effort or actual understanding with an identified state actor and Field's willful participation in the alleged constitutional deprivation.

**XII. FELIZA CASTRO AND ROSS MORREALE**

94. Castro is a private individual. Plaintiff does not allege that she acted under color of state law merely by seeking custody-related relief, requesting relocation, retaining counsel, participating in litigation, or receiving favorable rulings.

95. Plaintiff alleges that Castro's drug-testing history, the Rak letter, and O'Donnell's findings supplied factual background known to participants in the proceeding. Plaintiff does not ask this Court to decide whether Castro was a fit parent.

96. Plaintiff alleges Castro pursued relocation-related relief during the same period in which Kuzniar made recommendations concerning the child's placement. Temporal alignment alone is not pleaded as proof of conspiracy.

97. Any § 1983 liability against Castro depends upon proof that she knowingly reached an actual agreement or mutual understanding with an identified state actor to deprive Plaintiff of a federal right and participated in an overt act pursuant to that agreement.

98. Morreale is also a private individual. Plaintiff does not allege state action merely because of his relationship with Castro, residence, financial support, or participation in family matters.

99. Plaintiff alleges Morreale participated in matters concerning the child and communicated or met with participants in the underlying proceeding, including court-appointed professionals. Any § 1983 liability against Morreale is limited to specific acts proven to constitute knowing joint participation with an identified state actor in an independently unconstitutional objective.

100. Plaintiff alleges, on information and belief, that Morreale, although not a party to the underlying domestic-relations proceeding, met privately with Guardian ad Litem Kuzniar in the courthouse hallway on a court date and discussed the case and that day's proceedings with her outside Plaintiff's presence.

101. Plaintiff further alleges that the courthouse interaction was not the only communication between Morreale and Kuzniar. Plaintiff alleges that Morreale and Kuzniar met or communicated on other occasions concerning parenting issues involving the minor child and Morreale's views concerning what he believed was in the child's best interests, despite Morreale not being a parent or party to the proceeding.

102. Plaintiff further alleges that Morreale participated in matters surrounding Finn's evaluation and communicated with participants in the litigation concerning the child. The July 18, 2023 Finn email described above independently documents Morreale's direct payment of

more than Castro's pro-rata share of Finn's evaluation fee, with Kuzniar copied on the communication.

103. Plaintiff does not contend that Morreale's relationship with Castro, payment of expenses, a hallway conversation, or communications concerning parenting independently establish state action. Plaintiff pleads these specific interactions together as factual circumstances relevant to whether Morreale knowingly participated in an actual agreement or joint conduct with a state actor. To the extent the precise dates, content, and circumstances of additional Morreale-Kuzniar communications are not presently available to Plaintiff, those allegations are specifically pleaded on information and belief and are expected to be tested through discovery.

104. Plaintiff does not rely on labels such as "enterprise" or generalized coordination as substitutes for defendant-specific factual allegations.

## XIII. ALLEGED JOINT ACTION

105. Plaintiff recognizes that § 1983 does not reach merely private conduct and that parallel conduct, shared interests, successful advocacy, or receipt of favorable rulings does not alone establish state action.

106. Plaintiff's joint-action theory is limited to circumstances in which a private or court-appointed Defendant is proven to have reached an actual agreement or mutual understanding with an identified state actor to deprive Plaintiff of a federal right and to have participated in an overt act pursuant to that agreement.

10 7. Plaintiff identifies the March 5, 2024 off-record interaction between Kuzniar and Judge Loza as a specific alleged interaction with a judicial officer. Plaintiff alleges the event as a factual basis for his joint-action theory while recognizing that its legal effect depends on the function performed and the substance and purpose of the interaction.

108. Plaintiff further alleges that the December 17, 2024 filing restriction and defendant-specific conduct surrounding it are relevant to the alleged deprivation of access to the state court, while recognizing that a private attorney's request for relief and a judge's grant of relief do not, standing alone, establish an agreement.

109. Plaintiff does not allege a sweeping conspiracy based solely on adverse outcomes. The claims below depend on the specific acts pleaded and proof of the required state-action nexus.

110. Plaintiff's theory therefore rests on the cumulative, defendant-specific events pleaded above—including the alleged off-record judicial interaction, the handling of specific testing evidence, Morreale's alleged nonparty participation and documented payment to Finn, the operation of the filing restriction, and the alleged inaccuracies in the 2026 GAL report—rather than on adverse outcomes alone.

**XIV. COUNT I — PROCEDURAL DUE PROCESS, 42 U.S.C. § 1983**

111. Plaintiff incorporates Paragraphs 1 through 110 to the extent consistent with this Count.

112 . Plaintiff alleges a protected interest in constitutionally adequate procedures before governmental action affecting his parental rights and access to the courts.

113 . Plaintiff alleges that Defendants who acted under color of state law, or who became willful participants in joint activity with a state actor, deprived him of constitutionally adequate process through the specific conduct pleaded above.

114. Plaintiff does not premise this Count on the correctness of a custody, parenting-time, relocation, or other domestic-relations judgment. The alleged injury is the asserted denial of constitutionally adequate process through independently actionable conduct.

115. Plaintiff seeks damages only against a Defendant for whom he proves the required state-action nexus, personal participation, causation, and absence of applicable immunity.

## XV. COUNT II — FIRST AMENDMENT RIGHT TO PETITION / ACCESS TO COURTS, 42 U.S.C. § 1983

116. Plaintiff incorporates Paragraphs 1 through 110 to the extent consistent with this Count.

117 . Plaintiff engaged in petitioning activity by filing motions and seeking judicial consideration of matters in the underlying proceeding.

118. On December 17, 2024, the state court entered an order requiring Plaintiff to obtain leave before filing future pleadings after Steele requested such relief.

119. Plaintiff alleges that the restriction caused actual impediments to presenting matters to the state court.

120. Plaintiff does not allege liability against Steele merely for requesting the order. Liability against any private Defendant depends upon proof of willful joint action with a state actor and causation of an actual constitutional injury.

## XVI. CLAIMS NOT REPLEADED

121. Plaintiff does not plead a claim under 42 U.S.C. § 1985(3) because the present factual allegations do not identify the class-based invidiously discriminatory animus required for that statute.

122 . Plaintiff does not plead a derivative § 1986 claim.

123 . Plaintiff does not plead declaratory judgment or injunctive relief as standalone causes of action.

124. Plaintiff does not seek prospective relief against former private counsel based solely on past representation.

125. Plaintiff does not rely on generalized allegations of bias, disagreement with professional opinions, or allegations made by another litigant as substitutes for facts establishing the elements of his claims.

**XVII. PRAYER FOR RELIEF**

126. WHEREFORE, Plaintiff Edward Engels respectfully requests that this Court: (a) enter judgment in his favor on any Count proven against any Defendant; (b) award compensatory damages in an amount determined at trial; (c) award punitive damages against any Defendant as permitted by law upon the required showing; (d) award recoverable costs and any relief available to a prevailing pro se litigant under applicable law; and (e) grant such other relief as the Court deems just and proper.

**XVIII. JURY DEMAND**

127. Plaintiff demands trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.

Respectfully submitted,

/s/ Edward Engels
Edward Engels
Plaintiff, Pro Se
509 N. Racine Ave., Suite 1S
Chicago, IL 60642
eddie@e2brands.net
(312) 961-0805

## CERTIFICATE OF SERVICE

I certify that on the date this First Amended Complaint is filed following leave of Court, I will cause a true and correct copy to be filed through the Court's authorized electronic filing system, which will provide notice to counsel of record, and I will serve any party not receiving electronic notice by a method permitted by the Federal Rules of Civil Procedure.

/s/ Edward Engels

Edward Engels